Filed 4/26/16  P. v. Munoz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EDUARDO MUNOZ,<br><br>    Defendant and Appellant. | H040873<br>(Monterey County<br>Super. Ct. No. SS130889C) |

## I. INTRODUCTION

After pleading no contest to carrying a .38 revolver in a vehicle (count 1; Pen. Code, § 25400, subd. (a)(1))[1] and actively participating in a Norteño criminal street gang (count 5; § 186.22, subd. (a)), defendant Eduardo Munoz was placed on three years' probation subject to a number of terms and conditions.

On appeal, defendant challenges two terms and one condition, claiming the court erred in ordering him to pay booking fees without specifying their amount or basis (which defendant acknowledges is Gov. Code, § 29550.1) and ordering him to pay $864 for the preparation of a probation report and $81 monthly for probation supervision without considering his ability to pay.  Also, conditions requiring defendant to stay away

---

[1] Unspecified section references are to the Penal Code.

from the victim "John Doe," his places of residence, employment, and education, and vehicles he owns and operates are unconstitutionally vague without requiring defendant's knowledge of the victim's identity, locations, and vehicles. For the reasons stated below, we will conclude that defendant's challenges to the booking and probation fees have been forfeited by his failure to object in the trial court. In this case, we can resolve the vagueness claim as a matter of law. The probation condition must be modified to ensure defendant's knowledge of the victim's identity, locations, and vehicles. We will affirm the judgment as modified.

## II. TRIAL COURT PROCEEDINGS

### A. *THE OFFENSES*

During the evening of May 4, 2013, an Hispanic male in his late teens wearing a white long-sleeved shirt and a black beanie brandished a black handgun at the victim and asked him if he was afraid. The victim said, " 'no,' " and the male said he should probably be afraid. The male was sitting in a police-style white four-door Ford vehicle in Seaside driven by Ramsal Navarro. As the victim walked away, he heard the four occupants of the vehicle laughing.[2]

Seaside Police Officers responded to this report and, within 10 minutes, stopped a white four-door Ford Crown Victoria driven by Navarro. Defendant, born in May 1993, was sitting in the front passenger seat wearing a white long-sleeved shirt. In the rear seat were William Dominguez and Jose Acosta. All the passengers were on probation.

---

[2] Because the charges were resolved without a preliminary hearing, we take the facts from the probation report.

It appears from the probation report's summary of the police report that the victim identified the driver by name, but the front seat passenger only by appearance.

Some officers recognized the car as the one that had brought Dominguez to the Monterey Peninsula Community Hospital on April 20, 2013 with a gunshot wound to his leg. Navarro and defendant were in the car at the hospital.

A search of the vehicle on May 4 revealed a black beanie on the floor board just beneath the front passenger's seat and, in the glove compartment, a loaded black semiautomatic nine-millimeter handgun and a loaded .38 six-shot revolver. On the rear window area were a red baseball cap and red tennis shoes for a toddler. In the side pocket of the driver's door were brass knuckles. Three 32-ounce bottles of beer were in the car, two almost empty and one half-full.

Navarro admitted carrying brass knuckles for his protection. In police interviews, all the occupants denied knowledge of the guns in the car except for Dominguez, who admitted touching the revolver and knowing it was loaded. Navarro, defendant, and Dominguez told the police they were traveling to Salinas so Navarro could buy tennis shoes.

Navarro has several tattoos consistent with Norteño gang membership. Among other tattoos, defendant displayed "a depiction of the grim reaper, a seahorse tattoo on his left arm, a nautical star compass on his left inner forearm, a skeleton figure holding a double barrel firearm with a bandolier around it on his calf, and the phrase 'Seafanero' on his back." Defendant denied being a gang member.

The victim was initially reluctant to provide any information to the police due to fear of retaliation, but eventually did provide the police with the information summarized above. The victim expressed safety concerns for himself and his family. The probation officer was unable to speak with the victim as "[t]he identities of the victims in this case were not disclosed to the Probation Department in the crime reports submitted for review."

A report by the Peninsula Regional Violence and Narcotics Team documented defendant's gang history. On April 2, 2009, he was arrested for a curfew violation along

3

with a known Norteño.  On November 21, 2011, defendant was wearing "gang related attire" in the company of Navarro, Acosta, and another male.  Defendant made threatening statements to officers who were investigating a brandishing report.  He was arrested and convicted of misdemeanor resisting arrest (§ 148, subd. (a)(1)) and placed on probation for three years.

On May 8, 2013, "MUNOZ@SEAFANERO," a Twitter account associated with defendant, posted the following messages." 'haha we got caught slippin.' " " 'Just another day in my neighborhood with the same as niggas up to no good.' " " '[N]ever leave the house without my hammer bruh even if a nigga out on bail.' " " 'We spite the facts of life over protunes we out on bail for hammers cuz we toke too.' "  The probation officer recognized "hammer" to be slang for a gun.  Defendant apparently also retweeted messages from two known Norteños.

On October 3, 2013, defendant was in a large group of males, several of whom were wearing "gang related attire."  Some were known Seaside Norteños.

## B. *CHARGES AND PLEAS*

A complaint filed in February 2014 charged:  on May 4, 2013, defendant, Navarro, and Dominguez carried a .38 revolver that was loaded (count 3; § 25850, subd. (a)) and concealed in vehicle (count 1; § 25400, subd. (a)(1)); Navarro and Dominguez carried a nine millimeter handgun that was loaded (count 4) and concealed in a vehicle (count 2); each codefendant was actively participating in a Norteño criminal street gang (count 5; § 186.22, subd. (a)); defendant committed "an assault on JOHN DOE with a firearm …" (count 7; § 245, subd. (a)(2)) and criminally threatened "JOHN DOE" with great bodily injury (count 8; § 422, subd. (a)).[3]  Each count except the active gang participation was

---

[3]  The complaint inexplicably omitted a count 6.

alleged to have been committed in association with and for the benefit of a Norteño criminal street gang. (§ 186.22, subd. (b)(a)(A).)

A preliminary hearing originally scheduled for February 14 was rescheduled for February 28. On February 28, 2014, defendant agreed to plead no contest to counts 1 and 5 on condition that he be placed on felony probation. He initialed and signed a three-page written waiver of rights and plea of no contest to carrying a firearm concealed in a vehicle and actively participating in a criminal street gang. He stipulated there was a factual basis for his plea in a specific report by the Seaside Police Department.[4] He agreed to waive any challenge to any pre-plea order by appeal or writ. Defendant did not initial a section entitled "Harvey Waiver" stating, "The sentencing judge may consider the entire factual background of the case, including any unfiled, dismissed, or stricken charges or allegations or cases when granting probation, ordering restitution, or imposing sentence." After the court advised defendant of his rights, defendant entered no contest pleas. The court referred the case to probation for preparation of a presentence report.

## C. *Sentencing*

The probation report noted that codefendant Navarro was granted probation after he admitted unlawful possession of ammunition (§ 30305, subd. (a)(1)) for the benefit of a criminal street gang, while codefendant Dominguez was awaiting trial. Defendant had declined to speak with the probation officer.

The probation report recommended granting probation with 29 separate conditions and making other orders that were not probation conditions. As relevant to this appeal, the report proposed the following conditions.

"13. Not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter, or disturb the peace of John Doe.

---

[4] This police report does not appear in the record on appeal.

5

"14. Have no direct or indirect contact with the victim, including contact by telephone, writing, computer, or through another person[.][5]

"15. Stay away at least 100 yards from the victim, the victim's residence, the victim's place of employment, and any vehicle the victim owns or operates.

[¶] . . . [¶]

"29. You shall contact the Monterey County Revenue Division (located at 168 West Alisal St., 1st Floor, Salinas, CA 93901-2680) within three days, or if in custody, within three days of release, and make arrangements to pay all fines, fees, and victim restitution and pay as directed by the Revenue Division."

The report also proposed: "Defendant shall pay, in accordance with his/her ability to pay, the criminal justice administration fee incurred in defendant's arrest and booking in accordance with section 29550.1/29550.2 Government Code." "PROBATION SERVICE FEES: The defendant is ordered to pay $864.00 for the cost of preparation of the probation report plus $81.00 per month as the cost of supervised probation in accordance with his/her ability to pay. The defendant is ordered to provide the probation officer with financial information for evaluation of his/her ability to pay and is ordered to pay the amount probation determines he/she can afford."

At sentencing on April 2, 2014, defendant objected to some of the probation report's recommendations. As relevant to this appeal, counsel stated: "With respect to terms 13 and 14, the problem is that Mr. Munoz didn't plead to any offenses involving this particular individual. What he pled to was he pled to basically possessing a gun in a vehicle, and he also pled to being a member of a street gang. But there was no *Harvey*

---

[5] On the typed recommendation, this sentence ended "except in compliance with any order of the Family Law Court or Dependency Court." These words were lined out by the court at sentencing.

6

Waiver to any of the other counts. [¶] Additionally, I think subsequent police investigation with respect to contact where the complaining witness denied the original police report [*sic*]. I don't believe that that's appropriate."

Defendant did not object to the vagueness of any condition. Defendant strongly argued for no more than 180 days in jail. The prosecutor did not specifically respond regarding conditions 13 and 14, though the prosecutor stated it would involve more work to obtain *Harvey* waivers if defense counsel was going to rely on their absence.

In response to questions by the court, defendant said that he was 20 years old and lived with his sister. He was paid for working every day of the week in his father's landscaping business. He had a four-year-old daughter who lived with her mother, not him.

The court suspended imposition of sentence and placed defendant on three years' probation. Among the probation conditions were that defendant serve 365 days in jail and register as a gang member. "Do not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter or disturb the peace of the person you know to be John Doe. Have no direct or indirect contact with the person you know to be John Doe, including contact by telephone, writing, computer or through another person. Stay at least 100 yards away from John Doe's person, residence, place of employment, any vehicle he owns or operates and any school he attends."

"You're to contact the Monterey County Revenue Division within three days of your release from custody to make arrangements to pay all fines and fees, which can be paid in installments. [¶] . . . [¶] The following orders are not conditions of probation, subject to a hearing if necessary: [¶] . . . [¶] You're to pay any booking fees. You're to pay $864 for the cost of the probation, plus $81 a month as the cost of supervised probation." There was no objection to the fees and costs.

On April 3, 2014, defendant filed a notice of appeal challenging post-plea matters.

7

On April 15, 2014, the sentencing judge signed the minute order for the April 2 sentencing hearing. Without numbering probation conditions, the order modified the wording to mostly conform to the original probation recommendations. "You shall contact the Monterey County Revenue Division (located at 168 West Alisal St., 1st Floor, Salinas, CA 93901-2680) within three days, or if in custody, within three days of release, and make arrangements to pay all fines, fees, and victim restitution and pay as directed by the Revenue Division. [¶] . . . [¶] Not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter, or disturb the peace of John Doe. [¶] Have no direct or indirect contact with the victim, including contact by telephone, writing, computer, or through another person. [¶] Stay away at least 100 yards from the victim, the victim's residence, the victim's place of employment, schools, and any vehicle the victim owns or operates."

The minute order also provided: "Defendant shall pay, in accordance with his/her ability to pay, the criminal justice administration fee incurred in defendant's arrest and booking in accordance with section 29550.1/29550.2 Government Code. [¶] PROBATION SERVICE FEES: The defendant is ordered to pay $864.00 for the cost of preparation of the probation report plus $81.00 per month as the cost of supervised probation in accordance with his/her ability to pay. The defendant is ordered to provide the probation officer with financial information for evaluation of his/her ability to pay and is ordered to pay the amount probation determines he/she can afford."

While the court did not orally dismiss the other counts and enhancements at sentencing, they were dismissed in the minute order.

### III. ANALYSIS

#### A. WHICH PROBATION CONDITIONS APPLY?

What this court said in *People v. Rodriguez* (2013) 222 Cal.App.4th 578, 586 (*Rodriguez*), is equally true of this appellate record. "Frequently, as here, we encounter discrepancies in how the probation conditions imposed are stated in the reporters' versus

8

clerks' transcripts. In this case, there are unexplained major and minor differences between the conditions proposed in the probation report and adopted by the trial court and the conditions in the signed minute order. When an irreconcilable conflict exists between the transcripts of the court reporter and the court clerk, the modern rule is not automatic deference to the reporter's transcript, but rather adoption of the transcript due more credence under all the surrounding circumstances." (*People v. Smith* (1983) 33 Cal.3d 596, 599, fn. omitted; *People v. Harrison* (2005) 35 Cal.4th 208, 226; *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346 (*Pirali*).)[6]

Defendant in this case has noted discrepancies between the oral ruling and the signed minute order and wrongly assumes that the oral order is automatically controlling. (See *Pirali*, *supra*, 217 Cal.App.4th 1341, 1346.) The Attorney General cites both versions of the conditions as applicable. That is a formula for ambiguity.

As this court reiterated in *People v. Pirali*, *supra*, 217 Cal.App.4th 1341, "probation conditions 'need not be spelled out in great detail in court as long as the defendant knows what they are; to require recital in court is unnecessary in view of the fact the probation conditions are spelled out in detail on the probation order . . . .' " (*Id.* at p. 1364, quoting *People v. Thrash* (1978) 80 Cal.App.3d 898, 901-902.) A probation officer is more likely to hand a probationer a copy of a written minute order reflecting probation conditions than pages excerpted from a reporter's transcript of the sentencing hearing. A judge who has a practice of routinely signing minute orders including the terms and conditions of probation has an opportunity to clarify the court's intent and avoid misstatements.

---

[6] This court also recently noted the modern rule in *People v. Contreras* (2015) 237 Cal.App.4th 868.

9

In this case, the minute order went into much more detail concerning the fees for booking and probation supervision, making each dependent on defendant's ability to pay, directing defendant to provide financial information to the probation officer, and even providing the address of Monterey County's Revenue Division. As it appears that the minute order was intended to clarify the oral order, we will refer to its statement of the challenged conditions.

## B. *BOOKING AND PROBATION FEES*

### 1. *Booking Fees*

At sentencing, defendant did not object when the court stated, "subject to a hearing if necessary: [¶] . . . [¶] You're to pay any booking fees." On appeal, defendant objects for the first time to that order and to the minute order provision, "Defendant shall pay, in accordance with his/her ability to pay, the criminal justice administration fee incurred in defendant's arrest and booking in accordance with section 29550.1/29550.2 Government Code." He contends that the court should have specified the basis for and amount of the fee. The Attorney General contends defendant has forfeited these claims by not making them in the trial court.

Government Code sections 29550 through 29550.2 authorize a kind of " 'user' fee" (*People v. Rivera* (1998) 65 Cal.App.4th 705, 711) called a "criminal justice administration fee" for criminal defendants who are booked into county jail. The necessity for and amount of the booking fee depends on the nature of the arresting agency. (*People v. McCullough* (2013) 56 Cal.4th 589, 592 (*McCullough*).)

The parties agree on appeal that the arresting agency was the Seaside Police Department. If the arresting agency is "a city, special district, school district, community college district, college, or university . . . ," the booking county may directly bill that agency for no more than "one-half of the actual administrative costs." (Gov. Code, § 29550, subd. (a)(1).) Upon the arrestee's conviction, these governmental entities are entitled to the judgment of conviction including a mandatory court order for

reimbursement from the defendant without regard to the defendant's ability to pay. (Gov. Code, § 29550.1.) Reimbursement is also a mandatory probation condition without regard to the defendant's ability to pay, as the Attorney General points out. (*Ibid.*) The defendant's ability to pay is relevant under Government Code sections 29550 and 29550.2 when the arresting agency is the county or an unspecified governmental entity other than a city, special district, school district, community college district, college, or university.[7]

*McCullough*, *supra*, 56 Cal.4th 589 concluded, "a defendant who fails to contest the booking fee when the court imposes it forfeits the right to challenge it on appeal." (*Id.* at p. 591.) The Supreme Court assumed without deciding that Government Code section 29550.2 was applicable to its facts, as the defendant had asserted. (*Id.* at p. 592.) More specifically, the court concluded that by failing to object, the defendant forfeited an appellate challenge to a finding of the defendant's "ability to pay a booking fee under Government Code section 29550.2." (*Id.* at p. 599.) In reaching this conclusion, the court disapproved of this court's contrary holding in *People v. Pacheco* (2010) 187

---

[7] When the arresting agency is the county or an unspecified governmental entity, the county may recover its "actual administrative costs" (Gov. Code, §§ 29550, subd. (c); 29550.2, subd. (a)). When the county is the arresting agency, "[a] judgment of conviction *may* impose an order" for reimbursement without reference to the defendant's ability to pay. (Gov. Code, § 29550, subd. (d)(1), our emphasis.) When an unspecified governmental entity is the arresting agency, "[i]*f the person has the ability to pay*, a judgment of conviction *shall* contain an order for" reimbursement. (Gov. Code, § 29550.2, subd. (a), our emphasis.) If the county is the arresting agency, "[t]he court *shall*, as a condition of probation, order the convicted person, *based on his or her ability to pay*, to reimburse the county for the" booking fee. (Gov. Code, § 29550, subd. (d)(2), our emphasis.) When an unspecified governmental entity is the arresting agency, "[t]he court *shall*, as a condition of probation, order the convicted person to reimburse the county for the" booking fee without reference to the defendant's ability to pay. (Gov. Code, § 29550.2, subd. (a), our emphasis.)

11

Cal.App.4th 1392 (*Pacheco*), as defendant acknowledges. (*McCullough, supra,* at p. 599.)

In this appeal, defendant contends the court erred by not specifying the basis or the amount of the fee, even though defendant recognizes that Government Code section 29550.1 is the statute applicable to arrests by city police. As to the unspecified amount, this error was readily subject to correction upon a timely objection. We conclude that this error was forfeited.[8]

## 2. Probation Fees

At sentencing, defendant did not object when the court stated, "subject to a hearing if necessary: [¶] . . . [¶] . . . You're to pay $864 for the cost of the probation, plus $81 a month as the cost of supervised probation." On appeal, defendant objects for the first time on appeal to that order and to the minute order provision: "The defendant is ordered to pay $864.00 for the cost of preparation of the probation report plus $81.00 per month as the cost of supervised probation in accordance with his/her ability to pay. The defendant is ordered to provide the probation officer with financial information for evaluation of his/her ability to pay and is ordered to pay the amount probation determines he/she can afford." On appeal he contends that there was neither evidence that he waived his right to a hearing on his ability to pay these fees nor evidence of his ability to pay, so the matter should be remanded for a determination of his ability to pay. The Attorney General contends that defendant has forfeited these objections.

---

[8] We recognize that defendant's notice of appeal was filed 12 days before the court signed the minute order. While the minute order clarified the conditions and orders imposed at sentencing, we believe defendant had "a meaningful opportunity to object" to the essence of the challenged conditions and orders at sentencing. (*People v. Scott* (1994) 9 Cal.4th 331, 356.)

12

A defendant who does not agree on how much to pay for his or her supervision on probation is entitled to a judicial determination after a hearing of what amount, if any, the defendant is able to pay, including the costs of conducting a presentence investigation and preparing a report. (§ 1203.1b.)

On January 12, 2015, the same day defendant's reply brief was filed in this case, the California Supreme Court decided the companion cases of *People v. Trujillo* (2015) 60 Cal.4th 850 (*Trujillo*) and *People v. Aguilar* (2015) 60 Cal.4th 862 (*Aguilar*). The parties were aware of the issues pending in those cases. *Trujillo* expanded on the forfeiture rationale applied in *McCullough*. In *Trujillo*, the court considered section 1203.1b and concluded that the forfeiture rule applies "[n]othwithstanding the statute's procedural requirements …" and safeguards. (*Trujillo, supra,* at p. 858.) "In the context of section 1203.1b, a defendant's making or failing to make a knowing and intelligent waiver occurs before the probation officer, off the record and outside the sentencing court's presence." (*Ibid.*.) "[T]he legislative scheme contemplates that the probation officer's advisements and defendant's waiver of the right to a hearing will take place off the record, in the probation department. (§ 1203.1b, subd. (a).) Thus, unlike cases in which either statute or case law requires an affirmative showing on the record of the knowing and intelligent nature of a waiver, in this context defendant's counsel is in the best position to determine whether the defendant has knowingly and intelligently waived the right to a court hearing. It follows that an appellate court is not well positioned to review this question in the first instance." (*Trujillo, supra,* at p. 860.) The court further disapproved of inconsistent statements in *Pacheco*, on which defendant here has relied. (*Id.* at p. 858, fn. 5.)

We note, as did *Trujillo* and *Aguilar*, that appellate forfeiture of the issue of ability to pay probation-related fees does not leave a defendant wholly without recourse. (*Trujillo, supra*, 60 Cal.4th at p. 860; *Aguilar, supra*, 60 Cal.4th at p. 868.) The statute authorizes the trial court to hold additional hearings to review a defendant's ability to pay

(§ 1203.1b, subd. (c)) and authorizes the probationer to petition the probation officer and the court for such a review (*id.* at subd. (f)). (*Trujillo, supra*, at pp. 860–861.) However, we must conclude that defendant has forfeited an appellate claim that there is insufficient evidence of his ability to pay the fees ordered.

## C. *STAY-AWAY PROBATION CONDITIONS*

The probation report recommended the following conditions, among others: "[1] Not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter, or disturb the peace of John Doe. [¶] [2] Have no direct or indirect contact with the victim, including contact by telephone, writing, computer, or through another person. [¶] [3] Stay away at least 100 yards from the victim, the victim's residence, the victim's place of employment, and any vehicle the victim owns or operates.[9]" At sentencing, defendant objected to the first two of these three sentences as involving charged crimes of which he was not convicted, specifically assaulting "John Doe" with a firearm in count 7 and criminally threatening "John Doe" in count 8. Without a *Harvey* waiver, the court imposed each of these conditions by minute order, adding to the third sentence that defendant should stay at least 100 yards away from the victim's schools. On appeal, defendant contends that each condition is unconstitutionally vague.

Defendant also claims the court's oral order suffers from the same defect. The oral order stated: "Do not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter or disturb the peace of *the person you know to be* John Doe. Have no direct or indirect contact with *the person you know to be John Doe*, including contact by telephone, writing, computer or through another person. Stay at least 100 yards away from *John Doe's* person, residence, place of employment, any vehicle he owns or

---

[9] We have inserted bracketed sentence numbers for easier reference. We continue to omit from the second sentence what the court deleted at sentencing. (See fn. 5, *ante*.)

operates *and any school he attends*." We have italicized the differences between the oral order and the conditions initially recommended. The minute order returned to the wording of the recommended conditions, except for adding a reference to the victim's schools.

In *Rodriguez, supra*, 222 Cal.App.4th 578, this court acknowledged, "a reviewing court may examine the constitutionality of a probation condition, even if not raised in the trial court, if the question can be resolved as a matter of law without reference to the sentencing record." (*Id.* at p. 585, citing *In re Sheena K.* (2007) 40 Cal.4th 875, 888-889.)

In *Rodriguez, supra,* 222 Cal.App.4th 578, cited by the parties, we had occasion to consider whether a stay-away probation condition was unconstitutionally vague. We explained at page 594: "It is well established that a probation violation must be willful to justify revocation of probation. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379; *People v. Galvan* (2007) 155 Cal.App.4th 978, 982; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; § 1203.2, subd. (a).) It is also established that ' . . . Penal Code section 26 provides that a person is incapable of committing a crime where an act is performed in ignorance or mistake of fact negating criminal intent; a crime cannot be committed by mere misfortune or accident' ([*People v.* ]*Coria* [(1999)] 21 Cal.4th 868, 876) and that a probation condition 'should be given "the meaning that would appear to a reasonable, objective reader." ' ([*People v.* ] *Olguin* [(2008)] 45 Cal.4th 375, 382.) [¶] No reasonable law enforcement officer or judge can expect probationers to know where their victims are at all times. The challenged condition does not require defendant to stay away from all locations where the victim might conceivably be. It requires defendant to remove himself ('Stay away at least 100 yards . . . .') when he knows or learns of a victim's presence."

With this understanding, a court order to stay away from John Doe is perfectly clear and meaningful so long as there is an individual whom defendant knows by the

15

name or nickname "John Doe." Similarly, a court order to stay away from "the victim" is perfectly clear and meaningful when the defendant knows the identity of the person described as "the victim." For example, in cases involving domestic violence, cohabitant injury, embezzlement, or burglary of a neighbor, the victim is likely to be well-known to the defendant. However, "John Doe" is ordinarily an archetypical pseudonym, designating an unidentified male.

Vague probation conditions neither provide " 'adequate notice to potential offenders' " nor prevent " 'arbitrary law enforcement.' " (*In re Sheena K.*, *supra*, 40 Cal.4th 875, 890.) In *Rodriguez*, we found a probation condition requiring a probationer to stay away from "the victim" fatally ambiguous when another probation condition identified two separate victims of the defendant's criminal conduct. (*Rodriguez*, *supra*, 222 Cal.App.4th 578, 594-595.) It was not clear which victim the court had in mind. We also noted that the condition did "not sufficiently identify the victims, their addresses, or vehicles they own or operate" and there was nothing in the circumstances of the crime indicating that the defendant knew or reasonably should know who owned the car he damaged or where she lived and worked. (*Id.* at p. 595.)

This is not a case like *Rodriguez* where a probation condition referred to "the victim" when there were multiple victims. It is clear from the complaint and the probation report that only one person could be described as a victim of defendant's offenses, namely the person he allegedly assaulted and criminally threatened, although he was not convicted of either offense and there was no *Harvey* waiver. Contrary to defendant's suggestion, it is that individual to whom the challenged conditions referred interchangeably as "John Doe" or "the victim."

The kind of vagueness or overbreadth challenge to a probation condition that can be presented first on appeal is a " 'facial challenge,' " which "does not require scrutiny of individual facts and circumstances" (*In re Sheena K.*, at p. 885) and "is capable of

16

correction without reference to the particular sentencing record developed in the trial court . . . ." (*Id.* at p. 887.)

The Attorney General contends it is a question of fact and not law in this case whether defendant understood "the individual to whom the court was referring." The Attorney General also asserts there is no vagueness about the victim's identity. "[T]here was no doubt as to the individual to whom the court was referring. The probation report included the police report of the incident, and that police report was also expressly the factual basis for the plea."

That is true as far as it goes. The person whom defendant threatened was identified as "the victim" and "John Doe" in the probation report. However, his identity was concealed from the probation department and the court by the police report. The probation report stated, "[t]he identities of the victims in this case were not disclosed to the Probation Department in the crime reports submitted for review." From the probation report's summary of the police report, it seems the victim identified the driver of the car by name, but not the passenger who threatened him. It is possible that defendant knew the victim better than the victim knew him, but there is no evidentiary support for such an inference.

The pseudonym "John Doe" was obviously employed here in the complaint to forestall any retaliation by concealing the victim's identity from defendant. Intentionally concealing a crime victim's identity for this reason is a justifiable approach in describing a crime in a complaint or information, in a presentence probation report, and even in an appellate opinion. However, we regard it as a facial defect for a probation condition to employ an intentionally vague pseudonym unless there is some clarifying reference to the identity of "John Doe" elsewhere in the court's directions. There is none in this case. The court's oral probation conditions exclusively referred to "John Doe," not "the victim." No other condition clarified this reference. The court did not otherwise explain

17

the phrase to defendant. The probation officer was not directed to provide defendant with the identity or location of the victim.

In some cases, an order to avoid contact with "the victim" is not inherently vague. It may be meaningful to a probationer who already knows the identity or location of the victim of his or her crime. However, the minute order here used "the victim" as interchangeable with "John Doe," suggesting that the phrase "the victim" was also employed to conceal the victim's identity from defendant. That is particularly true in this case, where there is no indication that the court was ever informed of the victim's identity.

Even if we were to conclude that defendant has forfeited an appellate challenge to the vagueness of "the victim" in the probation conditions in the minute order, we reach a different conclusion as to "John Doe." Defendant is entitled to challenge the facial vagueness of these conditions on appeal.

Defendant proposes that the condition may be made constitutionally clear by addition of knowledge elements providing that defendant " 'not knowingly come within 100 yards' of a person who is sufficiently identified for [defendant] to know who he is." The Attorney General concedes the conditions "should be modified to require actual or constructive knowledge" and proposes, "[t]he appropriate modification may be effected by inserting the words 'a person [defendant] knows, or reasonably should know, is the victim' " where needed.[10] Defendant contends the Attorney General's modification does not go far enough.

---

[10] We are aware that the California Supreme Court is currently reviewing the issue: "Must no-contact probation conditions be modified to explicitly include a knowledge requirement?" (See *In re A. S.* (2014) 227 Cal.App.4th 400, review granted Sept. 24, 2014, S220280.) The no contact order in that case specifically named three people to be avoided by the probationer.

18

In *Rodriguez, supra*, 222 Cal.App.4th 578, the Attorney General conceded that a knowledge element should be added to the challenged stay-away condition. We concluded: "The trial court may modify the condition to require that defendant not knowingly come within 100 yards of a known or identified victim. It would be even more clear and informative if the condition actually named the victims and described any locations and vehicles that defendant is to stay 100 yards from." (*Id.* at p. 595.)

Requiring a probationer to try to learn the victim's identity and places of residence, employment, and education by other means ("a person you reasonably should know is the victim") would seem to undermine the intent of an order to stay away from the victim and avoid contact. In this case, where there is a danger of retaliation, the trial court need not identify the victim and the locations of his residence, employment, and education in probation conditions. The court may preserve the victim's anonymity and still offer protection against harassment by ordering, as the trial court did orally, "Do not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter or disturb the peace of the person you know to be John Doe. Have no direct or indirect contact with the person you know to be John Doe, including contact by telephone, writing, computer or through another person." The third condition requires similar modifications not ordered by the court. As so modified, the conditions are constitutionally clear. Defendant cannot willfully violate them without proof that he knows the identity of John Doe and his vehicles and the locations of his residence, workplace, and schools. Unintentional contact is not a violation.

## IV. DISPOSITION

Three probation conditions are ordered modified as follows. "Do not annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, batter or disturb the peace of the person you know to be John Doe. Have no direct or indirect contact with the person you know to be John Doe, including contact by telephone, writing, computer or through another person." "Stay at least 100 yards away from the person you know to be

19

John Doe and where you know he lives, works, and attends school, and any vehicle you know he owns or operates." As so modified, the judgment (probation order) is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.

*People v. Munoz*
**H040873**